Judge STUCKY
delivered the opinion of the Court.
We granted review to determine whether Appellant’s pretrial agreement (PTA) to “waive any waiveable [sic] motions” barred Appellant from asserting claims of multiplicity or multiplication of charges on appeal. We find that under these facts it did, and affirm.
This case began when Appellant brought a firearm onto Robins Air Force Base in violation of Base Instruction 31-101. Upset with the treatment he had received from two of his supervising noncommissioned officers, Appellant communicated to friend and coworker Staff Sergeant Jeremy Green detailed and apparently sincere threats to kill Master Sergeant Clifford Walton, Appellant’s flight chief and second-level supervisor, and Technical Sergeant Anthony Staggers, his immediate supervisor. While in pretrial confinement at the Houston County Detention Center in Perry, Georgia, for these offenses, Appellant concocted a plan to hire a contract killer to murder the principal witness to the threats. At Appellant’s request, a fellow prisoner put him in contact with a purported contract killer, in actuality an undercover law enforcement officer.
Appellant was tried before a general court-martial consisting of a military judge sitting alone. In return for a ten-year cap on any sentence to confinement and the dismissal of certain additional specifications, Appellant agreed to a PTA requiring him to plead guilty to the following offenses: one specification of attempted conspiracy to murder; one specification of conspiracy to murder; one specification of failure to obey an order or regulation; two specifications of communicating a threat; one specification of endeavoring to impede a court-martial in violation of Article 134; and two specifications of solicitation of murder. Articles 80, 81, 92, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 881, 892, 934 (2000).
In accordance with his pleas, Appellant was convicted of these offenses and sentenced by the military judge to a dishonorable discharge, confinement for eighteen years, forfeiture of all pay and allowances, and reduction to E-l. Under the terms of the PTA, the convening authority approved only so much of the sentence as extended to a dishonorable discharge, confinement for ten years, forfeiture of all pay and allowances, and reduction to E-l. The United States Air Force Court of Criminal Appeals (CCA) affirmed the findings and sentence. United States v. Gladue, 65 M.J. 903, 906 (A.F.Ct.Crim.App.2008).
I. The Pretrial Agreement
In the PTA, Appellant agreed to “waive any waiveable [sic] motions” and stated that “My defense counsel have fully advised me of ... any defenses that might apply_ I fully understand their advice and the meaning, effect, and consequences of this plea.” At the trial, the following colloquy took place:
MJ: In particular, do you understand that this term of you [sic] pretrial agreement precludes this court or any appellate court from having the opportunity to determine if you are entitled to any relief upon those motions?
ACC: Yes, sir.
MJ: Essentially it is a speak now or forever hold your peace scenario. The motion would have to be raised before entering a plea and if you don’t do so, then you lose the ability to argue them later on. Do you understand that?
ACC: Yes sir, I do.
*313 MJ: When you elected to give up the right to litigate these motions and I am going to be discussing with your counsel shortly what these motions are, did your defense counsel explain this term of the pretrial agreement and the consequences to you?
ACC: Yes sir, they did.
MJ: Did anyone force you to enter into this term of your pretrial agreement?
ACC: No, sir.
MJ: Defense counsel, which side originated the waiver of motions provision?
CIV DC: The prosecution did.
MJ: SSgt Gladue, although the government originated this term of your pretrial agreement, did you freely and voluntarily agree to this term of your pretrial agreement in order to receive what you believe to be a beneficial pretrial agreement?
ACC: Yes sir, I did.
The military judge then went on to discuss with Appellant’s civilian defense counsel certain motions. These included (1) a motion for change of venue, (2) a motion to suppress, (3) a motion for continuance, and (4) the defense of entrapment. Appellant acknowledged that he had discussed these possible motions with his counsel and, as part of the PTA offer, decided to affirmatively waive raising them. Motions relating to multiplicity and unreasonable multiplication of charges were not among those discussed by the military judge.
Before the CCA, Appellant argued that his conviction on the two specifications of solicitation to murder were multiplicious with the specifications of impeding a trial by soliciting another to commit murder and the attempted conspiracy to murder. Gladue, 65 M.J. at 904. In the alternative, Appellant argued that the charges constituted an unreasonable multiplication of charges. Id.
The CCA rejected this argument. The court held that the claims of unreasonable multiplication of charges and multiplicity were waived. Id. at 905-06. The CCA found that the military judge conducted an “extensive inquiry” into Appellant’s understanding and acknowledgment of each provision of the PTA. Id. at 904. Appellant’s agreement to the PTA was made freely and voluntarily, and thus the CCA found that as a “matter of fact” Appellant “voluntarily relinquished his rights at trial and on appeal to raise ‘waivable motions.’ ” Id.
II. Discussion
The granted issue arises out of the failure of military courts to consistently distinguish between the terms “waiver” and “forfeiture.” See United States v. Harcrow, 66 M.J. 154, 156 n. 1 (C.A.A.F.2008). “Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the ‘intentional relinquishment or abandonment of a known right.’ ” United States v. Olano, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. Harcrow, 66 M.J. at 156 (citing Olano, 507 U.S. at 733-34, 113 S.Ct. 1770). When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal. Id. (citing Olano, 507 U.S. at 733-34, 113 S.Ct. 1770).
The prohibition against multiplicity is grounded in compliance with the “constitutional and statutory restrictions against Double Jeopardy.” United States v. Quiroz, 55 M.J. 334, 337 (C.A.A.F.2001). The related policy against the unreasonable multiplication of charges, Rule for Courts-Martial (R.C.M.) 307(c)(4), addresses the danger of prosecutorial overreaching. Quiroz, 55 M.J. at 337.
Appellant asserts that an unconditional guilty plea does not waive multiplicity claims and that “the policy behind multiplicity dictates that the existence of a pretrial agreement does not prevent an appellant from raising issues waived at trial.” Citing United States v. Heryford, 52 M.J. 265, 266 (C.A.A.F.2000), and United States v. Britton, 47 M.J. 195, 198-99 (C.A.A.F.1997), Appellant argues that this is a case of plain error, *314 in that the specifications complained of are “facially duplicative,” that plain error exists, and that the waiver provision in the PTA is therefore ineffective.
This case is distinct from the cases relied upon by Appellant because here Appellant’s pretrial agreement expressly waived all waivable motions. We hold that Appellant waived, rather than forfeited these issues. In United States v. Lloyd, this Court recognized that even in cases in which an appellant failed to raise multiplicity at trial, he would be entitled to relief if the specifications were facially duplicative. 46 M.J. 19, 23 (C.A.A.F. 1997). But we added a caveat: “Express waiver or voluntary i consent, however, will foreclose even this limited form of inquiry.” Id. Although Lloyd only addressed multiplicity, we see no reason why the same caveat regarding express waiver or consent should not apply to the concept of unreasonable multiplication of charges, and therefore adopt it.
Admittedly, motions relating to multiplicity and unreasonable multiplication of charges were not among those subsequently discussed by the military judge and the civilian defense counsel. However, this does not affect the validity of the waiver. The text of the PTA unambiguously agrees to “waive any waiveable [sic] motions,” and after the military judge conducted a detailed, careful, and searching examination of Appellant to ensure that he understood the effect of the PTA provision, Appellant explicitly indicated his understanding that he was giving up the right “to make any motion which by law is given up when you plead guilty.” (Emphasis added.)
“A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution.” United States v. Mezzanatto, 513 U.S. 196, 201, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995). That includes double jeopardy, the basis of the multiplicity objection. See id. (citing Ricketts v. Adamson, 483 U.S. 1, 10, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (double jeopardy defense waivable by pretrial agreement)). The caution against the unreasonable multiplication of charges is not a constitutional imperative, but rather a presidential policy. United States v. Weymouth, 43 M.J. 329, 335 (C.A.A.F.1995). In the absence of an explicit prohibition, a party may knowingly and voluntarily waive such a non-constitutional right in a PTA. See Shutte v. Thompson, 15 Wall. 151, 82 U.S. 151, 159, 21 L.Ed. 123 (1872) (stating that “[a] party may waive any provision, either of contract or of a statute, intended for his benefit”); United States v. Edwards, 58 M.J. 49, 52 (C.A.A.F.2003) (citing Mezzanatto, 513 U.S. at 201, 115 S.Ct. 797). Although the President has prohibited the waiver of certain fundamental rights in a PTA, neither multiplicity nor the unreasonable multiplication of charges is among them. R.C.M. 705(c)(1)(B). Appellant’s express waiver of any waivable motions waived claims of multiplicity and unreasonable multiplication of charges, and extinguished his right to raise these issues on appeal. This being the case, we need not reach the issue of whether the specifications were in fact facially duplicative.
III. Decision
The decision of the United States Air Force Court of Criminal Appeals is affirmed.