# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, HAIGHT, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 EVAN M. MUSGROVE**
**United States Army, Appellant**

ARMY 20140777

Headquarters, Fort Bliss
Timothy P. Hayes, Jr., Military Judge
Lieutenant Colonel Runo C. Richardson, Acting Staff Judge Advocate

For Appellant: Colonel Kevin Boyle, JA; Captain Payum Doroodian, JA.

For Appellee:  Major A.G. Courie, III, JA.

10 August 2015

---------------------------------
SUMMARY DISPOSITION
---------------------------------

COOK, Senior Judge:

A military judge sitting as a special court-martial convicted appellant, consistent with his pleas, of making a false statement, soliciting another to commit an offense, and wrongfully receiving and concealing military property of a value of more than $500.00, in violation of Articles 107 and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 907 and 934 (2012).[1]  The military judge sentenced appellant to a bad-conduct discharge and confinement for ninety (90) days.  The convening authority approved the adjudged sentence.

Appellant's case is now pending review before this court pursuant to Article 66, UCMJ.  Appellant does not raise any assignments of error, but personally raises an issue pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that merits discussion but no relief.

---

[1] Specifications and charges alleging appellant engaged in larceny and conspiracy to commit larceny were dismissed at trial.

## BACKGROUND

Appellant and Private First Class (PFC) HH were assigned as arms room guards when military property from that area went missing. Suspecting appellant and PFC HH had a role in the property's disappearance, First Sergeant (1SG) RC, appellant's and PFC HH's 1SG, ordered the two soldiers into his office. Once the two soldiers arrived, 1SG RC, without informing appellant of his rights,[2] questioned both about the whereabouts of the missing property. Both soldiers denied knowing where the property was. These denials ultimately led to both soldiers being charged with making a false statement because both had indeed played a role in the property's disappearance and subsequent concealment and were, therefore, well aware of its current location. Although 1SG RC did not read appellant his Article 31(b), UCMJ, rights prior to questioning him, he did offer both soldiers "amnesty" if the missing property was returned.

During the providence inquiry, the military judge recognized that 1SG RC may have violated appellant's Article 31(b) rights and that appellant could have potentially moved to suppress this statement. Although appellant's trial defense counsel admitted to not reviewing this obvious issue with appellant prior to trial, the military judge had the defense counsel discuss a potential suppression motion with appellant during the providence inquiry. In addition, the military judge himself went into detail concerning the potential impact this issue could have on appellant's statement to 1SG RC, to include its potential suppression.

The military judge then covered the concept of waiver with appellant. This discussion included an explanation that even if appellant had a viable suppression motion, he could waive this motion, ostensibly in exchange for the sentence limitation contained in his pretrial agreement. After completing this colloquy with appellant and ensuring that appellant had no remaining questions concerning this issue, the military judge afforded appellant additional time to discuss this issue with his defense counsel. After appellant stated he did not need more time to discuss waiver with counsel, the military judge asked appellant whether he was "waiving any right that [he] may have had to suppress [his] statement [to the 1SG] in order to get the benefit of his pretrial agreement." Appellant responded "Yes, sir."

## LAW AND DISCUSSION

### 1. *Article 31(b),UCMJ Rights Warning*

Article 31(a), UCMJ prohibits persons subject to the UCMJ from compelling any person to incriminate themselves. To guard against this scenario, Article 31(b),

---

[2] There is also no evidence in the record that 1SG RC informed PFC HH of his rights under Article 31(b), UCMJ.

UCMJ, implements a privilege against self-incrimination by requiring soldiers to be informed of certain rights before they are questioned. Specifically, no person subject to the UCMJ may:

> interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

UCMJ art. 31(b).

In the case before us, it is clear: (1) 1SG RC was a person subject to the code; (2) at the time he questioned appellant he suspected appellant of an offense; and (3) 1SG RC failed to inform appellant of his rights under Article 31(b) before questioning him. In addition, our superior court in *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000) (internal citation omitted), further held that the person conducting the questioning must be participating in an official law enforcement or disciplinary investigation or inquiry. It is equally clear 1SG RC was conducting a disciplinary investigation or inquiry. This is not only supported by the presumption identified in *Swift* that questioning by a military superior in the "chain of command" is part of a "disciplinary" investigation, but further buttressed by the 1SG's offer of "amnesty" in exchange for the property's return *Id.* As such, we find 1SG RC violated appellant's rights afforded him under Article 31, UCMJ, through the aforementioned interrogation.[3]

Article 31(d), UCMJ generally proscribes the use of a statement obtained in violation of Article 31:

> No statement obtained from any person in violation of this article . . . may be received in evidence against him in a trial by court-martial.

### 2. *Waiver*

Our analysis, however, does not end with finding a violation of appellant's rights. To the contrary, we must now examine whether waiver applies. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v.*

---

[3] We need not address whether the offered "amnesty" would have been binding on the government if appellant and his cohort had come clean when provided the opportunity.

*Gladue*, 67 M.J. 311, 313 (C.A.A.F 2009) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993) (citation omitted)). "When . . . an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal." *Id*. (internal citation omitted). The concept of "forfeiture," on the other hand, refers to scenarios where an appellant fails to timely assert a right. *Id*. In those situations, we review for plain error. *Id*.

Based on the record before us, the military judge provided appellant guidance concerning the possibility that 1SG RC had violated his Article 31(b) rights and appellant's ability to move to suppress his unwarned statements based on this rights violation. In response, appellant explicitly acknowledged he understood the issue and by his plea was also explicitly waiving his opportunity to make such a motion. This being the case, we find appellant knowingly and voluntary waived his opportunity to challenge the admissibility of his statement.

## CONCLUSION

On consideration of the entire record, we hold the findings of guilty and the sentence as approved by the convening authority correct in law and fact. Accordingly, the findings of guilty and the sentence are affirmed.

Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court